UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TINGYUE SHI,

                Plaintiff,

– against –

BATGATELLE INTERNATIONAL, INC. a/k/a BAGATELLE INTERNATIONAL (USA), INC., ANNE KING, individually and in her official capacity, JOHN AND JANE DOES 1-10, individually and in their official capacities, *and* XYZ CORP. 1-10,

                Defendants.

**OPINION & ORDER**

20-cv-8473 (ER)

RAMOS, D.J.:

    Tingyue Shi brings this action against her former employer Bagatelle International, Inc. (also known as Bagatelle International (USA), Inc.) ("Bagatelle") and her former direct supervisor Anne King, as well as several unnamed corporations and individuals.  Shi brings fifteen federal and state claims for discrimination and retaliation based on race, national origin, disability, and perceived disability.  Doc. 1.  Before the Court is Bagatelle's motion for summary judgment on all claims.  Doc. 27.  For the reasons set forth below, Bagatelle's motion is GRANTED in part and DENIED in part.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    The following facts are undisputed except where otherwise noted.

    Shi, who is Chinese-American, worked as a sourcing manager in Bagatelle's New York office from November 26, 2018 to June 13, 2019.  Doc. 44 (Pl.'s Statement of Disputed Facts in Opp'n to Def.'s Mot. for Summ. J. Pursuant to Loc. Rule 56.1) at 3–4, 21.  Bagatelle is a Montreal-based company that designs and manufactures sportswear, outerwear, and leather clothing.  *Id.* at 2.  As sourcing manager, Shi was responsible for sourcing fabric, coordinating costs, developing new mills and fabrics, and

communicating with other internal departments and external vendors and factories. *Id.* at 17; Doc. 40 (Shi Decl.) ¶ 3. Shi's direct supervisor was Anne King, then-vice president of Bagatelle. Doc. 44 at 2–3. King also hired Shi. *Id.* at 4. In Shi's signed offer of employment, she was provided two weeks of paid vacation and three days of paid sick or personal days. *Id.* at 5.

Approximately one month after Shi began her employment with Bagatelle, on December 20, 2018, she went to the hospital emergency room due to shortness of breath and flu-like symptoms. Doc. 47 (Reply to Pl.'s Counter-Statement of Material Facts Not in Dispute Pursuant to Fed. R. Civ. P 56(c)(1) and LR 56.1(a)) at 3. While at the hospital, both of her of her lungs collapsed, requiring surgery on her left lung on December 26, 2018, and her right lung on December 28, 2018. *Id.* Shi was diagnosed with pneumothorax and was medically restricted from lifting heavy objects and from being exposed to anxiety or stress. *Id.* at 3–4. Bagatelle disputes that Shi communicated any medical restrictions to King or anyone else at Bagatelle. *Id.*

Shi returned to work on January 7, 2019—although she alleges she was not cleared to return to work until January 28, 2019. *Id.* at 4. For an unspecified period after Shi returned, Bagatelle allowed her to work from home three days per week. Doc. 44 at 14. Upon her return, King moved Shi's desk next to hers. Doc. 47 at 4–5. Shi alleges that King ordered the desk moved "in order to continuously observe [Shi], intimidate her, and harass her," but Bagatelle alleges King moves every new recruit's desk close to hers so that the new recruit could learn from King by example. Doc. 44 at 19. However, for the few weeks Shi had been employed before going on medical leave, King had never asked for the desk to be moved. Doc. 47 at 4–5.

On May 15, 2019, Shi requested four days of paid time off ("PTO"), but King denied the request. Doc. 44 at 15; Doc. 47 at 5. Neither party states whether the requested PTO was connected to Shi's health. Bagatelle alleges that King told Shi the denial was because King lacked the authority to provide the requested days off, since Shi

2

had already exhausted all of the PTO days provided for in her offer of employment. *Id.* Shi disputes that King said she lacked authority to grant the request and disputes that she had exhausted the PTO days provided in her offer of employment. *Id.*; Doc. 44 at 15. Shi alleges that after King denied the request, Shi complained to King that another employee, Sophia Solomonson, who is Caucasian, was given preferential treatment because Solomonson had been granted ten PTO days, even though Solomonson had joined Bagatelle at approximately the same time Shi had. *Id.* Bagatelle disputes that Shi ever complained to King about any preferential treatment, including of Solomonson. Doc. 47 at 5.  It further argues that Shi was extended more flexibility than any other employee in terms of working from home, but Shi disputes this.  Doc. 44 at 16. Ultimately, Shi received the requested days off, although it is disputed whether King authorized the PTO (as Shi alleges) or Michael Litvak (Bagatelle's chief executive officer), authorized the PTO (as Bagatelle alleges). Doc. 47 at 5.  When Shi returned from her four PTO days, Shi alleges King had her phone extension removed; Bagatelle disputes that Shi ever had her own telephone. *Id.* at 6.

On June 12, 2019, Shi asked King for a half day off on June 13 for a six-month post-surgery follow up with her doctor. *Id.* at 6–7.  When Shi returned from her doctor's appointment on June 13, 2019, she was fired by King. *Id.* at 7.  Bagatelle alleges that Shi's employment was terminated solely for Shi's poor performance, but Shi alleges she was terminated because of her race, national origin, disability, and perceived disability. Doc. 44 at 21.

Specifically, Bagatelle alleges that, throughout the duration of Shi's employment, it received many complaints from other employees concerning her performance, and King had counseled and verbally warned Shi several times about her poor performance, but Shi's performance never improved. *Id.* at 18–20.  Bagatelle does not specify the number or nature of the complaints it received from employees, nor any information as to the complainants; nor does it specify what warnings were given to Shi or when.  Indeed,

3

the sole detail Bagatelle provides concerning Shi's performance is a single identical sentence in King and Litvak's declarations—which is not replicated or referenced in Bagatelle's Rule 56.1 statement—that "Shi often failed to share with sales or management the information concerning the costs that she obtained from factories, and Shi also continuously failed to get prices to Bagatelle's salespeople." Doc. 30 (Litvak Decl.), ¶ 28; Doc. 31 (King Decl.) ¶ 22. Shi disputes that she was ever counseled, verbally or otherwise, by anyone at Bagatelle as to her alleged poor performance, and she disputes that she performed poorly. Doc. 44 at 19. It is undisputed that there are no emails, text messages, or other documentation pre-dating Shi's termination corroborating Bagatelle's alleged concerns regarding her performance. Doc. 47 at 2–3, 7.

Shi however, alleges that when she returned to work in January following her hospitalization, King treated her rudely on the basis of her race, national origin, disability, and perceived disability. Specifically, Shi alleges that King ridiculed her in front of other staff about her Chinese accent; told Shi "I can't understand what you're talking about," referring to Shi's Chinese accent; rolled her eyes with annoyance or displeasure when she spoke with Shi; and generally treated Shi in a rude, disrespectful, and derogatory manner. Doc. 44 at 11–14. Bagatelle denies that any such conduct ever occurred. *Id.* at 8–14. It also denies that King ever understood or perceived Shi to be disabled in any way. *Id.* at 17. It is undisputed that there are no emails, text messages, or other documentation corroborating Shi's allegations of King's discriminatory and derogatory behavior. *See id.* at 8–14. Bagatelle further notes that, during the period of Shi's tenure with Bagatelle, Bagatelle employed two other Asian-American employees at its New York office, Terrenz Hun and Katie Yun. *Id.* at 5. Shi states that Bagatelle produced no "undisputed admissible evidence during the course of discovery" identifying the race or national origin of Hun or Yun. *Id.*

Shi filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on July 11, 2019, a copy of which was transferred to the New

4

York State Department of Human Rights ("NYSDHR") on January 10, 2020. Doc. 47 at 7. It is undisputed that the charge alleged Shi was discriminated against on the basis of her race and national origin. Doc. 44 at 22. Shi alleges the charge also included a claim of disability discrimination. *Id*. However, in the EEOC charge, which Bagatelle submitted to the Court in support of its motion, Shi left the box for disability discrimination unchecked and instead checked only the boxes for race, retaliation, and national origin. Doc. 29-1 (EEOC Charge and NYSDHR Complaint). Shi made only passing reference to any medical issues and instead reiterated repeatedly that Bagatelle discriminated against her because she was Asian and Chinese. *Id.* Shi received a right to sue letter on July 21, 2020. Doc. 39-12.

Shi filed the complaint in the instant case on October 12, 2020. Doc. 1. Bagatelle answered on January 11, 2021. Doc. 7. An unsuccessful mediation was held on March 26, 2021. Doc. 9. The case thereafter proceeded to discovery, which concluded November 10, 2022. Docs. 12, 24. Bagatelle moved for summary judgment on December 8, 2022. Doc. 27.

## II.    LEGAL STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free School Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might "affect the outcome of the litigation under the governing law." *Id.* (quoting *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008)). The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence

sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts." *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue. *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citations omitted); *see also Schiano v. Quality Payroll Sys., Inc.*, 445 F.3d 597, 603 (2d Cir. 2006) (stating courts must use "an extra measure of caution" in determining whether to grant summary judgment "because direct evidence of discriminatory intent is rare and such intent often must be inferred from circumstantial evidence found in affidavits and depositions" (citation omitted)). However, "the salutary purposes of summary judgment—avoiding protracted, expensive and harassing trials— apply no less to discrimination cases." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). Thus, even in the context of a discrimination case, "a

6

plaintiff must provide more than conclusory allegations to resist a motion for summary judgment." *Holcomb*, 521 F.3d at 137.  Courts may grant summary judgment against "discrimination claims in cases lacking genuine issues of material fact." *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 69 (2d Cir. 2001) (citation omitted).

## III.   DISCUSSION

Shi brings claims under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq.* ("ADA"), Title VII of the Civil Rights of 1964, as amended 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), the New York State Human Rights Law, § 296, *et seq.* ("NYSHRL"), and the New York City Human Rights Law, § 8-101 ("NYCHRL") for unlawful employment discrimination on the basis of her race, national origin, disability, and perceived disability.  *See* Doc. 1.

### A. Bagatelle's Motion for Summary Judgment is Denied as to Shi's Race and National Origin Discrimination Claims Under Title VII, the NYSHRL, and the NYCHRL (Counts 1–6)

Shi's first three causes of action allege Bagatelle discriminated against her on the basis of her race in violation of Title VII, the NYSHRL, and the NYCHRL; and her fourth to sixth causes of action allege Bagatelle discriminated against her on the basis of her national origin in violation of the same statutes.  Doc. 1 ¶¶ 55–80.

Shi's race and national origin employment discrimination claims under Title VII and the NYSHRL are properly analyzed under the three-step burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Asiedu v. Broadreach Med. Res.*, 19-cv-11825 (ER), 2022 U.S. Dist. LEXIS 165568, at *26 (S.D.N.Y. Sep. 13, 2022).  Under the *McDonnell Douglas* framework, a plaintiff alleging discrimination must first demonstrate a prima facie case of discrimination.  *McDonnell Douglas*, 411 U.S. at 802.  To prove a prima facie case of discrimination, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position in question; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to an

7

inference of discrimination. *Ruiz v. Cty. of Rockland*, 609 F.3d 486, 491–92 (2d Cir. 2010) (citing *Holcomb*, 521 F.3d at 138). The Second Circuit has explained that a plaintiff's burden at this stage is de minimis. *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 467 (2d Cir. 2001). Nonetheless, in order to state a prima facie case for discrimination, "a plaintiff must proffer some admissible evidence of circumstances that would be sufficient to permit an inference of discriminatory motive," *Bennett v. Watson Wyatt & Co.*, 136 F. Supp. 2d 236, 246 (S.D.N.Y. 2001), *aff'd*, 51 F. App'x 55 (2d Cir. 2002), and "cannot meet its burden through reliance on unsupported assertions," *Goenaga*, 51 F.3d at 18. "Statements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 308 (S.D.N.Y. 2000) (quoting *Bickerstaff v. Vassar College*, 196 F.3d 435, 451–52 (2d Cir. 1999)). "A plaintiff's self-serving statement, without direct or circumstantial evidence to support the charge," is also insufficient. *Fincher v. Depository Trust & Clearing Corp.*, No. 06-cv-9959 (WP), 2008 U.S. Dist. LEXIS 70046, at *8 (S.D.N.Y. Sep. 17, 2008).

Here, it is not disputed that Shi is a member of a protected class as a Chinese-American woman, nor is it disputed that she suffered an adverse employment action when she was terminated. Thus, the only disputed questions are whether she was qualified for her position, and whether her termination gave rise to an inference of discrimination. As to the first question, Shi has submitted her resume, which sets forth her prior experience in the garment industry (Doc. 39-6); and there is no documentation pre-dating Shi's termination as to any concerns regarding Shi's performance (Doc. 47 at 2, 7). The Court thus finds that Shi has demonstrated she was qualified for her position. As to the second question, Shi has submitted her declaration specifically detailing incidents of alleged discriminatory behavior, as well as declarations from three other individuals—a former Chinese-American Bagatelle employee, who resigned approximately six months before Shi was terminated and witnessed King's alleged discriminatory behavior, as well as

Shi's husband and friend, with whom Shi frequently discussed King's behavior towards Shi at work. Docs. 40–43. Taken together, the declarations set forth allegations of specific examples of King's discriminatory and derogatory conduct. The specific incidents detailed in the declarations give rise to an inference of discrimination, and Shi has therefore established a prima facie case for discrimination.

If a plaintiff successfully presents a prima facie case of discrimination, the defendant must then rebut the presumption by offering legitimate and non-discriminatory reasons for the adverse employment action. *Abdu-Brisson*, 239 F.3d at 468–69 (citations omitted). "The employer need not *persuade* the court that it was motivated by the reason it provides; rather it must simply articulate an explanation that, if true, would connote lawful behavior." *Greenway v. Buffalo Hilton Hotel*, 143 F.3d 47, 52 (2d Cir. 1998) (emphasis in original). "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993)). To satisfy the second step of *McDonnell Douglas*, "[i]t is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "If the defendant carries this burden of production, the presumption [of discrimination] raised by the prima facie case is rebutted," and "drops from the case." *Id.* at 255, 255 n.10.

Here, Bagatelle submits five declarations—from King, Litvak, Hun, Yun, and another Bagatelle employee (Sofia Wahlberg, Design Director)—stating that neither King nor Bagatelle ever treated Shi in a discriminatory manner and that Shi was terminated solely for performance reasons. *See* Docs. 30–34. Bagatelle's sole detail as to the nature of Shi's performance issues and the complaints against her, however, is a single sentence stating that Shi often failed to share information concerning pricing and costs with Bagatelle's management and sales team. Doc. 30, ¶ 28; Doc. 31 ¶ 22. The only other reference in the declarations to Shi's performance is an additional identical sentence in

9

King and Litvak's declarations that "Bagatelle received many complaints from its staff concerning Shi's performance. Doc. 30, ¶ 29; Doc. 31 ¶ 23. Thus, Bagatelle's evidence does little more than repeat the rote allegation that Bagatelle received an unknown number of complaints from unnamed Bagatelle employees about largely undescribed issues with Shi's performance. Thus, the only admissible, non-hearsay evidence that Bagatelle has proffered as to the second step of the *McDonnell Douglas* framework is a single sentence in King's declaration. A movant for summary judgment must produce admissible evidence, including to satisfy its burden under the second step of the *McDonnell Douglas* framework. *See Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509); *Saenger*, 706 F. Supp. 2d at 504. Accordingly, Bagatelle has not met its burden, and this constitutes an independent basis on which to deny Bagatelle summary judgment.

Even, however, if Bagatelle *had* met its burden—*i.e.*, established its explanation for the termination (Shi's poor performance) would connote lawful behavior if taken as true, *see Greenway*, 143 F.3d at 52—Bagatelle's motion would nonetheless be denied at the third step of the *McDonnell Douglas* framework. At the third step, the burden then shifts back to Shi to prove intentional discrimination by a preponderance of the evidence. *Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (quoting *Fields v. N.Y. State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120–21 (2d Cir. 1997)). The Second Circuit has explained that "there are two distinct ways for a plaintiff to prevail—'either by proving that a discriminatory motive, more likely than not, motivated the defendants or by proving both that the reasons given by the defendants are not true and that discrimination is the real reason for the actions.'" *Id.* (quoting *Fields*, 115 F.3d at 121). It is important to note, that "[a]lthough intermediate evidentiary burdens shift back and forth under this framework, 'the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.'" *Reeves*, 530 U.S. at 143 (quoting *Burdine*, 450 U.S. at 253).

10

Here, the declarations Shi submitted allege both that Bagatelle communicated no concerns as to her performance and that at least one other Bagatelle employee witnessed and personally experienced King discriminate against Shi and other Asian-American employees. Bagatelle's declarations state the exact opposite: that King was never discriminatory, and Shi performed poorly. The evidence in this case is thus, essentially, two competing sets of declarations concerning Bagatelle's motivations. Courts are cautious in granting summary judgment in employment discrimination cases where the employer's intent is at issue, *Holcomb*, 521 F.3d at 137, and are not empowered to make credibility determinations at summary judgment, *Reeves*, 530 U.S. at 142. Thus, the competing declarations raise, at minimum, genuine disputes of material fact as to the reasons for Shi's termination, and the Court accordingly cannot grant Bagatelle summary judgment on Shi's Title VII and NYSHRL claims for race and national origin discrimination. *See Holcomb*, 521 F.3d at 137.

Moreover, the NYCHRL was "designed to be 'broader and more remedial' than Title VII." *See Hornig v. Trs. of Colum. Univ.*, No. 17-cv-3602 (ER), 2022 U.S. Dist. LEXIS 60683, at *34 (S.D.N.Y. Mar. 31, 2022) (quoting *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 671 (S.D.N.Y. 2012)); *see also Bright-Asante v. Saks & Co.*, No. 15-cv-5876 (ER), 2020 U.S. Dist. LEXIS 47354, at *14 (S.D.N.Y. Mar. 18, 2020) (stating that, to defeat summary judgment on an NYCHRL claim, a plaintiff "need only show that her employer treated her less well, at least in part for a discriminatory reason," and an employer "is entitled to summary judgment on this basis only if the record establishes as a matter of law that 'discrimination play[ed] no role' in its actions," even where the employer presents evidence of its legitimate, non-discriminatory motives (quoting *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 n.8 (2d Cir. 2013))). Thus, where a plaintiff's claims survive even under the more stringent Title VII standard, they necessarily meet the standard under the NYCHRL as well. *See Hornig*, 2022 U.S.

Dist. LEXIS 60683, at *39.  Summary judgment on Shi's NYCHRL claims for race and national origin discrimination is also therefore denied.  *See id.*

### B. Bagatelle's Motion for Summary Judgment is Granted as to Shi's Disability and Perceived Disability Discrimination Claims Under the ADA, the NYSHRL, and the NYCHRL (Counts 7-12)

Shi's seventh to ninth causes of action allege Bagatelle discriminated against her on the basis of her disability in violation of the ADA, the NYSHRL, and the NYCHRL respectively; and her tenth to twelfth causes of action allege Bagatelle discriminated against her on the basis of her perceived disability in violation of the same three statutes. Doc. 1 ¶¶ 81–106.  The Court grants Bagatelle summary judgment on Shi's ADA claims because Shi failed to allege disability discrimination in her EEOC charge.  Summary judgment is also granted on Shi's remaining NYSHRL and NYCHRL claims for her failure to establish a prima facie case of discrimination.

*1. The Court Lacks Jurisdiction over Shi's ADA Claims (Counts 7 and 10)*

Bagatelle asserts Shi's ADA claims are procedurally defective because her EEOC charge only included claims for race and national origin discrimination, not disability, and the district court therefore lacks jurisdiction over the disability claim.  Doc. 35 at 20–21.  District courts lack jurisdiction over ADA claims not contained in the EEOC charge or "reasonably related" to the claims in the EEOC charge.  *McLeod v. 1199SEIU United Healthcare*, No. 17-cv-7500 (GHW), 2019 U.S. Dist. LEXIS 55085, at *24–25 (S.D.N.Y. Mar. 29, 2019); *see also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 712 (2d Cir. 1998) ("It is true that we generally have no jurisdiction to hear claims not alleged in the employee's EEOC charge.").  A claim is only considered "reasonably related" if the conduct complained of "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge that was made."  *Deravin v. Kerik*, 335 F.3d 195, 200–01 (2d Cir. 2003) (citation omitted).  Accordingly, "[c]laims premised on entirely different types of discrimination are not considered reasonably related." *McLeod*, 2019 U.S. Dist. LEXIS 55085, at *25 (citing *Dahbany-Miraglia v. Queensboro*

12

*Cmty. Coll.*, 03-cv-8052 (SAS), 2004 WL 1192078, at *14 (S.D.N.Y. May 27, 2004)) (finding age and disability discrimination claims not reasonably related to race and color discrimination claims); *see also Deravin*, 335 F.3d at 201 (noting that where assertion of racial bias is "conceptually distinct" from national-origin discrimination claim, raising the latter "does not automatically suffice to alert the agency" to investigate the former); *Tsai v. Rockefeller Univ.*, 137 F. Supp. 2d 276, 284 (S.D.N.Y. 2001) (collecting cases and holding that "Title VII claims are not reasonably related to ADA claims").

      Shi's EEOC charge repeatedly fails to allege any disability discrimination claims. Doc. 29-1. In the question labeled "discrimination based on," Shi checked boxes for race, retaliation, and national origin but left unchecked the box for "disability" and even for "other." *Id.* at 2. And in the section asking Shi to describe "the particulars" of the discrimination, Shi wrote that she "was the only Asian, Chinese employee" in Bagatelle's New York office; that King treated her less favorably than "White, American employees"; that King was "bothered by [Shi's] Chinese accent"; and that King "retaliated against [Shi] for opposing her disparate treatment, and terminated [Shi] because [Shi is] Asian, Chinese." *Id.* at 2–3. Shi concluded: "Based on the above, I believe [Bagatelle] discriminated and retaliated against me due to my race and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended." *Id.* at 3. Shi points to a reference in the "particulars" section of her EEOC charge that states that she was terminated after she returned to work from her approved half-day off for a doctor's appointment and mentions her prior surgeries. Doc. 38 at 27; *see also* 29-1 at 2. These passing references are insufficient to have reasonably expected the EEOC to investigate a disability discrimination claim. *See Deravin*, 335 F.3d at 201. Indeed, the form that transmitted the EEOC charge to the New York Division of Human Rights only checked Title VII claims based on race, national origin, and retaliation, without checking the boxes for ADA or disability discrimination. Doc. 29-1 at 4–5. Consequently, Shi's EEOC charge failed to include an ADA disability discrimination claim, and this Court accordingly lacks

jurisdiction over Shi's ADA claim. *See Espinoza v. Port Auth. of NY & NJ*, 19-cv-258 (AT), 2022 U.S. Dist. LEXIS 37998, at *20 (S.D.N.Y. Mar. 2, 2022). Bagatelle's motion for summary judgment on Shi's disability discrimination claims is therefore granted.

    *2. Summary Judgment is Granted as to Shi's NYSHRL and NYCHRL Claims*

Disability discrimination claims are also analyzed under the *McDonnell Douglas* framework. *See Kovaco v. Rockbestos*, 834 F.3d 128, 136 (2d Cir. 2016); *Beaton v. Metro. Transp. Auth. N.Y.C. Transit*, No. 15-cv-8056 (ER), 2018 U.S. Dist. LEXIS 35486, at *28 n.6 (S.D.N.Y. Mar. 2, 2018) (holding that discrimination claims under the NYSHRL and NYCHRL are analyzed substantially the same way as claims under the ADA because the prima facie case is the same under each statute). Consequently, as with Shi's race and national origin discrimination claims, Shi must first establish a prima facie case of discrimination, at which point the burden shifts to Bagatelle to offer a legitimate, nondiscriminatory reason for its actions. *McDonnell Douglas*, 411 U.S. at 802–03. If Bagatelle satisfies its burden, the burden shifts back to Shi to demonstrate that the proffered reason is pretextual. *Id*. at 803. Ultimately, Shi will be required to prove Bagatelle acted with discriminatory motivation. *See Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015). Here, Shi has not demonstrated that she had or was perceived to have a disability, nor that her termination was "because of" her alleged disability. Accordingly, she has failed to establish a prima facie claim of discrimination at the first step of the *McDonnell Douglas* framework, and the Court accordingly grants Bagatelle summary judgment on those claims.

To establish a prima facie case of disability discrimination for purposes of the first step of the *McDonnell Douglas* framework, Shi must demonstrate that: (1) her employer is subject to the applicable law (ADA, the NYSHRL, and the NYCHRL); (2) she is actually disabled or Bagatelle perceived her to be disabled; (3) she is otherwise qualified to perform the essential functions of her job with or without reasonable accommodation; and (4) she suffered an adverse employment action because of her disability. *Rios v.*

14

*Department of Education*, 351 F. App'x 503, 505 (2d Cir. 2009) (citing *Jacques v. DiMarzio, Inc.*, 386 F.3d 192, 198 (2d Cir. 2004)); *Dearden v. Glaxosmithkline LLC*, No. 15-cv-7628 (RWS), 2017 U.S. Dist. LEXIS 149408, at *34 (S.D.N.Y. Sep. 14, 2017). Bagatelle does not dispute that it is a covered employer but denies that Shi has demonstrated the other three elements of a prima facie case. Doc. 35 at 22.

  The NYSHRL defines a disability as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques." N.Y. Exec. Law §§ 292(21), 296(1)(a). The NYCHRL defines disability even more broadly as "any physical, medical, mental or psychological impairment," N.Y. City Admin. Code § 8-102(16)(a), which is further defined as "an impairment of any system of the body; including, but not limited to: the neurological system; the musculoskeletal system; the special sense organs and respiratory organs, including, but not limited to, speech organs; the cardiovascular system; the reproductive system; the digestive and genito-urinary systems; the hemic and lymphatic systems; the immunological systems; the skin; and the endocrine system," § 8-102(16)(b)(1); *see also Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010) ("This definition of disability is, on its face, broader than that provided by the NYSHRL.").

  Even under the liberal NYSHRL and NYCHRL definitions, however, temporary conditions do not qualify as disabilities. *Mehmet Emin Tatas v. Ali Baba's Terrace, Inc.*, No. 19-cv-10595 (ER), 2022 U.S. Dist. LEXIS 60796, at *30–32 (S.D.N.Y. Mar. 31, 2022) (collecting cases identifying two- to twelve-week conditions that did not constitute NYSHRL or NYCRHL disabilities, and concluding that plaintiff's basil cell carcinoma did not constitute a disability). Here, Shi was not able to work from December 20, 2018 to January 7, 2019 due to her pneumothorax and related surgeries, but Shi has not alleged that, upon her return to work, she suffered any after-effects from the pneumothorax or surgeries other than medical restrictions from lifting heavy objects and being exposed to

15

anxiety or stress for an unspecified period of time.  Doc. 40 ¶¶ 14–16.  Indeed, the only other instance in which Shi alleged she brought her medical conditions to Bagatelle's attention was when she requested a half day off for the post-surgery follow-up in June 2019 that immediately preceded her termination.  Doc. 47 at 6–7.  Restrictions from lifting heavy objects and exposure to stress or anxiety do not constitute the sorts of impairments contemplated by the NYSHRL or the NYCHRL, but, even if they did, Shi has not alleged that her medical restrictions were so long or permanent as to constitute a disability under either statute.[1]  *See Mehmet Emin Tatas*, 2022 U.S. Dist. LEXIS 60796, at *30–32.  Accordingly, Bagatelle's motion for summary judgment on Shi's NYSHRL and NYSCHRL disability claims (Counts Eight and Nine) is granted.  *Id.*; *Beaton*, 2018 U.S. Dist. LEXIS 35486, at *28 n.6 (citing *Arena*, 2000 WL 264312 at *7).

Similarly, Shi has not satisfied her burden to demonstrate that King or Bagatelle perceived her as disabled.  "Conjecture is not enough" to resist summary judgment on a claim of perceived disability discrimination; rather "[t]o establish discrimination based on perceived disability, a plaintiff must *show* that his employer perceived him as having a disability."  *Dearden*, 2017 U.S. Dist. LEXIS 149408, at *37 (emphasis in original) (quoting *Thomsen v. Stantec, Inc.*, 483 F. App'x 620, 622 (2d Cir. 2012)).  Shi has not alleged King or Bagatelle made any statements regarding her surgery or resulting medical restrictions, nor has Shi even alleged that Bagatelle refused to allow her any of the time off she requested for her health.  *See generally* Doc. 44.  Accordingly, Shi cannot make out a prima facie claim of discrimination on the basis of perceived disability, and Bagatelle is entitled to summary judgment on those claims (Counts Ten and Eleven).  *See*

---

[1] The standards for establishing disability under the NYSHRL and the NYCHRL are more lenient than those under the ADA.  *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 541 (S.D.N.Y. 2009) ("The New York State Executive Law and the New York City Administrative Code have a broader definition of 'disability' than does the ADA; neither statute requires any showing that the disability substantially limits a major life activity [like the ADA requires]." (citing *Giordano v. City of New York*, 274 F.3d 740, 753 (2d Cir. 2001)). Accordingly, where Shi's medical condition does not constitute a disability within the meaning of the NYSHRL and the NYCHRL, it necessarily cannot constitute a disability within the meaning of the ADA, even had those claims not been procedurally defective.

*Dearden*, 2017 U.S. Dist. LEXIS 149408, at *37–38; *Beaton*, 2018 U.S. Dist. LEXIS 35486, at *28 n.6 (citing *Arena*, 2000 WL 264312 at *7).

Moreover, the approximately six-month gap between Shi's surgeries and her termination suggest that her termination was not "because of" her alleged disability, as required in the fourth element of a prima facie disability discrimination claim. *See Wein v. N.Y. City Dep't of Educ.*, No. 18-cv-11141 (PAE), 2020 U.S. Dist. LEXIS 150136, *38–41 (S.D.N.Y. Aug. 19, 2020) (granting defendant summary judgment on plaintiff's disability discrimination claim where fifteen months passed between the onset of plaintiff's disability and the adverse employment action because no inference of discrimination was available after more than two months, and plaintiff had therefore "failed to carry his minimal burden of establishing a prima facie case of discrimination"); *Sussle v. Sirina Prot. Sys. Corp.*, 269 F. Supp. 2d 285, 316 (S.D.N.Y. 2003) ("For mere temporal proximity to establish causality, the intervening period must be very close." (citation and internal quotation marks omitted)). This would constitute an independent basis on which to reject an inference of discrimination and grant Bagatelle summary judgment on Shi's disability discrimination claims.

### C. Bagatelle's Motion for Summary Judgment is Granted as to Shi's Retaliation Claims Under Title VII, the NYSHRL, and the NYCHRL (Counts 13–15)

Shi's final three claims allege that, Bagatelle retaliated against her for engaging in protected activity—complaining of King's discriminatory, harassing, and disparate treatment—in violation of Title VII, the NYSHRL, and the NYCHRL. Doc. 1 ¶¶ 107–19. Specifically, Shi points to her complaint to King that King approved Solomonson's PTO request but not hers. Doc. 38 at 34. Because Shi has not alleged that her complaints about the preferential treatment were explicitly on the basis of race and national origin discrimination—rather than only implying discrimination or being on the basis of general unfairness—she has not demonstrated that she engaged in protected activity, and Bagatelle's motion for summary judgment on those claims is therefore granted.

17

Retaliation claims are also properly analyzed under the three-step *McDonnell Douglas* burden-shifting framework under which Shi must first establish a prima facie case of discrimination; at which point the burden shifts to Bagatelle to offer a legitimate, nondiscriminatory reason for its actions; and then back to Shi to demonstrate that the proffered reason is pretextual. *See Taylor v. Seamen's Soc'y for Children*, No. 12-cv-3713 (PAE), 2013 U.S. Dist. LEXIS 176914, at *55, 63 (S.D.N.Y. Dec. 16, 2013). To state a prima facie case of retaliation, a plaintiff must show: (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action. *McMenemy v. City of Rochester*, 241 F.3d 279, 28283 (2d Cir. 2001).

"Opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection." *Davis-Bell v. Columbia Univ.*, 851 F. Supp. 2d 650, 682 (S.D.N.Y. 2012) (citation omitted). Even "informal protests of discriminatory employment practices, including making complaints to management" constitute protected activity. *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (citation omitted). But, "implicit in the requirement that the employer have been aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited by Title VII." *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). "While there are no magic words that must be used when complaining about a supervisor," *Ramos v. City of New York*, No. 96-cv-3787 (DLC), 1997 U.S. Dist. LEXIS 10538, at *7 (S.D.N.Y. July 22, 1997), "[t]he onus is on the speaker to clarify to the employer that he is complaining of unfair treatment due to his membership in a protected class and that he is not complaining merely of unfair treatment generally," *Sharpe v. MCI Commc'ns Servs., Inc.*, 684 F. Supp. 2d 394, 406 (S.D.N.Y. 2010) (citation omitted). Accordingly, where a plaintiff never mentions discrimination based on her race or

18

national origin—and rather suggests only that the complaints "implied" discrimination based on her race and national origin as compared to her allegedly preferred peers—the plaintiff has failed to state a prima facie case for retaliation sufficient to resist summary judgment. *Jain v. Tokio Marine Mgmt.*, No. 16-cv-8104, 2018 U.S. Dist. LEXIS 166692, at *24–26 (S.D.N.Y. Sep. 27, 2018); *see also McDowell v. T-Mobile USA, Inc.*, 307 F. App'x 531, 534 (2d Cir. 2009) (summary order) (holding that, where an employee "never explicitly complained about racial discrimination in any of his oral complaints" to his employer but argued that he "implicitly" complained about race, the employee had failed to establish a prima facie case); *Taylor*, 2013 U.S. Dist. LEXIS 176914, at *65 (holding that, although NYCHRL claims are broader than companion federal and state claims, "a plaintiff claiming retaliation under the NYCHRL must still show that her employer was aware she engaged in a protected activity, and that there was a causal connection between the protected activity and the employer's subsequent action" (citations omitted)); *Ramos*, 1997 U.S. Dist. LEXIS 10538, at *7 ("Unfair treatment [alone] . . . is not actionable under the civil rights laws and a complaint about it does not constitute protected activity. To be actionable, the unfair treatment must be due to one's membership in a protected class and the complaint must make that point sufficiently clear.").

Here, Shi alleges she complained to King that Solomonson was being granted preferential treatment when Solomonson's request for PTO was approved but Shi's was denied. Doc. 44 at 15; Doc. 47 at 5. But Shi does not state in her declaration that, when complaining to King, she specifically argued the preferential treatment was on the basis of race or national origin. Doc. 40 ¶ 25(a). Rather, Shi only mentions that she is Chinese-American where Solomonson is non-Asian, non-Chinese Caucasian. *Id.* The specific detail that Shi's declaration *does* state that she mentioned to King is that she and Solomonson joined Bagatelle at the same time and therefore should have been granted the same benefits. *Id.* But it is not apparent from the face of the declaration that Shi expressly told King that she believed the discriminatory treatment was on the basis of her

19

race or national origin.  *See id.*  Accordingly, Shi's complaint to King only "implied" race and national origin discrimination and is insufficient to establish a prima facie case of retaliation.  *See McDowell*, 307 F. App'x at 534; *Jain*, 2018 U.S. Dist. LEXIS 166692, at *24–26; *Taylor*, 2013 U.S. Dist. LEXIS 176914, at *65; *Ramos*, 1997 U.S. Dist. LEXIS 10538, at *7.  Bagatelle's motion for summary judgment on Shi's retaliation claims is therefore granted.

### IV. CONCLUSION

For the reasons set forth above, Bagatelle's motion for summary judgment is GRANTED as to Shi's disability and perceived disability discrimination claims (Counts 7–12), as well as her retaliation claims (Counts 13–15), and DENIED as to Shi's race and national origin disability claims (Counts 1–6).

The parties are directed to appear at a pretrial conference on July 13, 2023, at 11:30 AM by telephone.  The parties are instructed to call (877) 411-9748 and enter access code 3029857# when prompted.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 27.

It is SO ORDERED.

Dated:   June 26, 2023
         New York, New York

                                                    EDGARDO RAMOS, U.S.D.J.